IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLORIN B. PIRV, an individual,                    CV 06-145 PK

               Plaintiff,                    FINDINGS AND
                                                  RECOMMENDATION
                                                  /ORDER

v.

GLOCK, INC., a Georgia corporation;
GLOCK, Ges.m.b.H., an Austrian Limited
Liability Company; FEDERAL
CARTRIDGE COMPANY, a Minnesota
corporation; ALLIANT TECHSYTEMS
INC., a Delaware corporation,

               Defendants.
_____

PAPAK, Magistrate Judge:

      Plaintiff Florin Pirv brought suit against Defendants Glock, Inc., Glock Ges.m.b. (Glock

Austria), Federal Cartridge Company and Alliant Techsystems after the Glock handgun he was

using exploded during a police department training, causing injuries to his face and hands.  Pirv

asserts claims for products liability and negligence against all defendants.  This court has

FINDINGS AND RECOMMENDATION/ORDER - Page 1

jurisdiction pursuant to 28 U.S.C. § 1332.

Defendants' motion to dismiss for evidence spoliation is presently before the court. In the alternative, the Glock defendants seek evidentiary sanctions and to recover expert costs and expenses. Although Federal Cartridge Company and Alliant Techsystems also seek dismissal, they oppose lesser evidentiary sanctions. For the reasons set forth below, the defendants' motions should be denied in their entirety.

## STATEMENT OF FACTS

On March 4, 2004, Florin Pirv was injured when a Glock Model 21 service pistol exploded while he was shooting at the Portland Police Bureau's training range. Glock Austria manufactured the pistol that malfunctioned. Glock, Inc. distributes Glock products in the United States. At the time of the incident, the pistol was loaded with ammunition manufactured by Federal Cartridge and Alliant Techsystems. A similar pistol failure occurred three days before and involved another police officer using a Glock Model 21 pistol and the same type of ammunition.

## I.      Custody of the Pistols Prior to the Present Lawsuit

Following the two pistol failure incidents, the Portland Police Bureau held discussions with Glock, Inc. During those discussions, Glock asked the Bureau to send the pistols to its office in Georgia. The Bureau replied that it would not release the pistols until its investigation was complete and instead sent Glock photos of the pistols. During negotiations with the Bureau over replacing the Glock 21 models with different handguns, Glock again asked for the pistols so it could perform its own inspection. The Bureau refused and Glock in turn refused to provide replacement models because it wanted to test the pistols first to determine the cause of the

FINDINGS AND RECOMMENDATION/ORDER - Page 2

malfunction.

Beyond the examinations conducted by its staff, the Portland Police Bureau retained two experts to inspect the pistols.  Lester W. Roane of H.P. White Laboratory examined them and inferred that overloaded ammunition was the likely cause of the failure, but recommended a metallurgical evaluation.  The Bureau retained Dr. R. Craig Jerner of J.E.I. Metallurgical to conduct the metallurgical tests and, in March 2005, sent him the barrels from the two pistols along with an exemplar pistol of the same model and from the same lot as the two pistols.  Jerner informed the Bureau that the testing would involve cutting the barrels in half.  Jerner did indeed cut into the barrel of Pirv's gun and removed pieces of it for testing.  Jerner has written on evidence spoliation issues and thus appears to know the repercussions of destructive testing or disposal without permission of the parties.

Jerner's report, dated August 2005, concluded that the pistols failed due to problems in the manufacturing process.   Jerner's report, however, noted, "[f]urther study, including the production of engineering drawings, materials specifications, heat treatment and coating process specifications, and subsequent additional testing might modify these opinions."   Jerner thought he would need to conduct additional testing on the exemplar barrel before he could determine whether the Glock 21 model was safe.  Following his report, however, Jerner indicated that his examination of the pistol barrels was "one of the most extensive studies" he had done.

The City of Portland shared Jenner's report with counsel for Glock in February 2006 and filed suit against Glock Inc. and Glock Austria in March 2006.  The suit alleged strict products liability, negligence and breach of contract claims.  The City voluntarily dismissed the action in

FINDINGS AND RECOMMENDATION/ORDER - Page 3

September 2006.  During the six months that the litigation was pending, Glock did not file a motion to produce the pistols, nor did it secure the pistols to conduct its own testing.

## II.    Efforts to Obtain the Pistols After Commencement of Pirv's Suit

Pirv contemplated litigation as early as October 2005 and asked the Police Bureau to provide him with the testing and investigative reports associated with the failed pistol.  The Police Bureau gave him a copy of Jerner's report in December 2005 and Pirv filed suit on February 2, 2006, one month before the City filed its suit.  Pirv's counsel sent a copy of the complaint to the Portland Police Bureau but did not specifically request that the Bureau preserve the pistols as evidence.

On March 21, 2006, Glock defendants' counsel sent a letter to Pirv's counsel asking where the pistol and its ammunition were stored and demanding that the party in possession of them preserve them in their present condition.  Pirv's counsel replied, stating that the Portland Police Bureau had the pistol and had conducted tests on it.  Pirv's counsel indicated that he was seeking custody of the gun to conduct inspection and testing and that he would coordinate testing with all parties to allow their own experts to be present.  At the time, the City of Portland had already filed suit against Glock, Inc. and Glock Austria but they did not seek to obtain the pistols directly from City through discovery.

In the summer of 2006,  the parties attempted to set up a time to inspect the pistols.  In June, Pirv's counsel faxed a draft subpoena to the Portland City Attorney's Office, indicating that the date and time for inspection were to be determined by the availability of counsel and experts for all the parties.  The parties and the City of Portland held a phone conference on July 24 to set a date for inspection.  Following that conference, Pirv's counsel sent a letter to the defendants

and the City, confirming that Pirv's gun expert, Roy Ruel, would perform non-destructive tests, and that the parties agreed that they each would keep a custody log for the pistols when they conducted tests.  In mid-August, counsel for Glock exchanged emails with Pirv's counsel regarding setting up a joint inspection.  In late August, counsel for Pirv emailed the City  of Portland regarding setting up a time for inspection.

Glock, Inc. made several other attempts to obtain the pistol.  In November and again in December of 2006, Glock's counsel asked the parties to confer on a date for a joint inspection. Glock, Inc. also sought to obtain the pistol through discovery.  In January 2007,  Pirv responded to the Glock Inc.'s request for production by indicating that he did not have the pistol in his possession.

The parties ultimately decided to delay the inspection.  Counsel for Federal Cartridge and Alliant Techsystems wanted to wait until they all had a chance to determine what documents would be forthcoming from the City of Portland, review the existing reports, select experts and design an inspection protocol.  The parties also desired to wait until Glock Austria had received service of process.  Glock Austria did not enter the case until July 11, 2007.

## III.    The Disposal of the Pistol Barrels

Jenner disposed of the barrels some time between November 2006 and May of 2007, at least sixteen months after he submitted his report to the Police Bureau and at least nine months after Pirv filed suit–but before Pirv retained him in the case.  After the disposal of the barrels came to light, Jenner told Pirv's counsel that he called the Portland Police Bureau twice regarding the barrels and that the Bureau informed him they were no longer interested in the incident.  He asserted that it is common for clients not to seek the return of destructively tested

items.  He could not remember when the actual disposal occurred.  A defense expert averred that standard practice requires consultants to keep and maintain records on the receipt, location and disposition of any evidence received and to send a letter to the client regarding whether to return or discard any evidence.  Jerner searched for the pistols to no avail.

Neither Pirv nor his counsel nor anyone else acting on his behalf contacted Jenner before November 29, 2007, when Pirv retained Jenner as an expert in his case.  Shortly after Pirv retained him, Jerner indicated that he was uncertain regarding the location of the barrels.  Pirv's counsel, however, believed that the Portland Police Bureau had the pistols in their entirety because the Bureau said it would provide the pistols for inspection.  Pirv's counsel did not realize that Portland Police Bureau might have had only the remainder of the pistols without the barrels. Pirv himself thought that the Bureau had the pistols.

In March 2008, the counsel for Federal Cartridge and Alliant Techsystems sent a letter to the other parties, renewing the efforts to set up a date to "go forward with an inspection of the guns and cartridges."  Pirv's counsel spoke with the counsel for Federal Cartridge and Alliant Techsystems and confirmed his understanding that the Portland Police Bureau had the pistols. The parties exchanged emails and set an April 2008 inspection date.

In April 2008, unaware that the barrels were gone, the defendants' metallurgical and firearm consultants traveled to Portland to inspect Pirv's pistol and the pistol involved in the similar incident.  At the inspection, the parties learned for the first time that the Portland Police only had custody of the pistols' frames and ammunition.  Pirv's counsel then revealed that Jerner had told him earlier that he did not know the location of the barrels and that counsel had assumed the Portland Police Bureau had them.

FINDINGS AND RECOMMENDATION/ORDER - Page 6

IV.    **The Impact of the Lost Barrels**

The parties dispute the impact of the lost barrels.  Glock's metallurgical consultant indicates that metallurgical testing demands actual viewing of the specimen, as opposed to its depiction in photographs.  Additionally, he indicated that the presence of technical experts for both parties ensures that tests are performed properly and instruments are calibrated.  He further asserted that his tests would have entailed macro-photography of the entire fractured barrel surface, as opposed only those areas Jerner documented, to ensure that Jerner's conclusions were representative of the entire sample.  Jerner, on the other hand, contends that his tests produced extensive photographs of the fractured area of the barrel that other experts can review and interpret.  He further asserts that tests of the entire barrel would be expensive and irrelelvant because only the area near the fracture matters.  Moreover, the parties have the expert reports of Roane, and an additional plaintiff expert, Ruel, that suggest the ammunition could have caused the failure.[1]

## LEGAL STANDARD

A federal trial court has the inherent discretionary  power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1993).[2]  Thus, a district court has the discretion to impose

---

[1]The court makes no finding regarding the veracity of these reports or whether they meet the evidentiary standard for admission of expert opinions, as those issues are not before the court on the present motion.

[2] Courts are split regarding whether state or federal law governs the imposition of sanctions for spoliation of evidence when the federal court exercises diversity jurisdiction. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449-50 (4th Cir. 2004) (imposition of sanctions for spoliation is an inherent power of federal courts and the decision to impose them is governed by federal law); *King v. Illinois Central Railroad*, 337 F.3d 550, 556 (5th Cir. 2003) (federal

sanctions based on its power "to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal citation omitted).

## DISCUSSION

I.      **Motion to Dismiss or to Preclude Expert Testimony**

Before a court imposes the "harsh sanction" of dismissal, "the conduct to be sanctioned must be due to willfulness, fault, or bad faith." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (internal citation omitted).  Even when a court imposes a lesser evidentiary sanction than outright dismissal, it must find that the party willfully destroyed the evidence.  *Unigard Sec. Ins. Co.,* 982 F.2d at 368 & n.2; *Glover*, 6 F.3d at 1329; *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).  Among the sanctions a court may consider is the exclusion of witness testimony that unfairly prejudices an opposing party.  *Unigard Sec. Ins. Co.,* 982 F.2d at 368.

A party's destruction of evidence qualifies as willful spoliation if the party "has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (internal citation omitted).  Sanctions, however, are not appropriate where a party has no notice of the pending litigation and merely destroys evidence pursuant to a document retention policy.  *Akiona*, 938 F.2d at 161 (adverse inference inappropriate where, several years before incident that gave rise to the litigation,

---

courts generally apply their own evidentiary rules in diversity matters, therefore, federal law governs whether a district court abused its discretion in declining to apply spoliation sanctions); *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 803 (6th Cir. 1999) (applying state law).  The Ninth Circuit applies federal law.  *See Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 824 (9th Cir. 2002); *Unigard*, 982 F.2d at 366.

FINDINGS AND RECOMMENDATION/ORDER - Page 8

government destroyed records pursuant to policy).  Thus, an expert has "no legal duty to be a

pack rat," and need not retain information that he or she reasonably assumes is unnecessary.  *See*

*McDonald v. Sun Oil Co.*, 423 F. Supp. 2d 1114, 1122 (D. Or. 2006) (denying adverse inference

where experts destroyed their handwritten notes but no evidence demonstrated that the destroyed

notes were relevant to an issue at trial) (internal citation omitted).

      Here, Jerner did not engage in willful spoliation.  Jenner disposed of the pistols when he

had no reason to know they would be relevant to any litigation.  The Bureau retained Jenner to

perform tests on the pistols.  Following the tests, the Bureau, who at that time was Jerner's only

client with any connection to the pistols, told Jenner they were no longer interested in the

incident.  Jenner disposed of them at some point thereafter.  Pirv did not retain Jenner until

several months later.

      In addition, although Pirv knew that the barrels were relevant before Jenner disposed of

them, Pirv is not responsible for their destruction.  Pirv never had possession of the pistols

following the accident, did not himself destroy them, and had no reason to believe that the

Portland Police Bureau failed to retain them in their entirety.  Pirv's counsel sent a copy of the

complaint to the Bureau after he filed suit and worked with the Bureau and the parties to arrange

a time for inspection.  Meanwhile, Glock and the Bureau were engaged in litigation shortly after

Pirv filed suit and Glock did not seek to obtain the pistols directly from the Bureau.  At any rate,

at no time did the Bureau tell anyone that it did not have the barrels or give anyone reason to

believe that they would be destroyed.

      Defendants cite cases where a party or someone hired by the party destroyed evidence

after notice that it could be relevant to litigation.  *Leon*, 464 F.3d at 956-57 (plaintiff destroyed

FINDINGS AND RECOMMENDATION/ORDER - Page 9

evidence in bad faith); *Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998) (evidence

suggested that defendants destroyed documents out of fear of future litigation); *Allstate Ins. Co.*

*v. Sunbeam Corp.*, 53 F.3d 804, 805 (7th Cir. 1995) (plaintiff disposed of portions of evidence

that  were relevant to other possible theories of causation);  *Vodusek v. Bayliner Marine Corp.*,

71 F.3d 148, 156 (4th Cir. 1995) (same); *Glover*, 6 F.3d at 1322,1329-30 (plaintiff's expert

disassembled the lighter that was the subject of the products liability action and plaintiff's

counsel improperly stored it); *Unigard Sec. Ins. Co.* , 982 F.2d at 365, 369 (plaintiff's employee

authorized disposal of evidence); *Washington Alder, LLC v. Weyerhaeuser Co.*, No. 03-753,

2004 WL 4076674, at *2-3 (D. Or. May 5, 2004) (ordering evidentiary hearing in light of

defendants' failure to implement document retention procedures after notice of potential anti-

trust suit); *State Farm Fire & Cas. v. Frigidaire*, 146 F.R.D. 160, 161-63 (N.D. Ill. 1992)

(plaintiff disposed of evidence after her investigator told her she could); *Kirkland v. New York*

*City Housing Auth.*, 666 N.Y.S.2d 609, 611-13, 236 A.D. 170 (N.Y. App. Div. 1997)

(defendant's employees destroyed evidence after initiation of the suit); *Nally v. Volkswagon of*

*Am. Inc.*, 405 Mass. 191, 196-98, 539 N.E. 2d 1017 (Mass. 1989) (remanding for evidentiary

finding on whether plaintiff's expert deliberately or negligently destroyed evidence); *see also*

*Nation-Wide Check Corp. v. Forest Hills Distrib., Inc.*, 692 F.2d 214, 217 (1st Cir. 1982)

(defendant's assignee intentionally discarded documents in "knowing disregard" of plaintiff's

claim).

        I do not find these cases persuasive.  Here, Pirv himself did not destroy the pistols.

Moreover, Jenner was not employed by Pirv when he disposed of the pistols, nor did Jerner

know that the pistols were relevant to any pending litigation when he disposed of them.

FINDINGS AND RECOMMENDATION/ORDER - Page 10

Defendants also cite cases where the plaintiff knew of potential litigation but relinquished control of the evidence to a third party and failed to take steps to ensure the evidence would be preserved. *BTO Logging, Inc. v. Deere & Co.*, 174 F.R.D. 690, 693-694 (D. Or. 1997) (plaintiff sold harvester involved in accident before litigation concluded)*; see also Perez-Velasco v. Suzuki Motor Co.*, 266 F. Supp. 2d 266, 268 (D.P.R. 2003) (after plaintiff's expert inspected vehicle involved in accident, plaintiff allowed financing entity to resell it); *Quaglietta v. Nissan Motor Co.*, No. 97-5965, 2000 WL 1306791, at *1 (D.N.J., Aug. 16, 2000) (plaintiff allowed vehicle to be sold for salvage after he initiated suit); *Brancaccio v. Mitsubishi Motors Co.*, No. 90-7852, 1992 WL 189937, at *1-2 (S.D.N.Y., Aug. 31, 1992) (plaintiff allowed vehicle to be repossessed); *Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 26-27, 2003 Pa. Super. 152 (Pa. Super. Ct. 2006) (after initiating litigation, plaintiff had surgery to remove medical device at issue but did not attempt to retrieve the device from the hospital until two years later).

These cases are similarly unpersuasive. Pirv did not sit idly by. Rather, the Portland Police Bureau led Pirv's counsel to believe that it properly retained the entire pistols and Pirv's counsel undertook efforts to arrange an inspection by all parties.

One case cited by the defendants comes closer to the mark, but does not support an evidentiary sanction in the circumstances presented here. In *Bowman v. American Medical Systems, Inc.*, the plaintiff's doctor disposed of the prosthesis he surgically removed from the plaintiff although the plaintiff wrote a letter two months before the surgery requesting that he preserve it. No. 96-7871, 1998 U.S. Dist. LEXIS 16082, at *10-13 (E.D. Pa. Oct. 9, 1998). The doctor then passed away, leaving no record of the condition of the prosthetic device when he disposed of it or why he had done so. The plaintiff filed suit one year afer the surgery. The case

FINDINGS AND RECOMMENDATION/ORDER - Page 11

does not indicate whether the plaintiff undertook efforts to secure the device during that time. The court dismissed the action because no physical evidence remained to substantiate the plaintiff's product liability claim and defendants had no means to prove alternative causes for the device's failure.  *Id.* at *14.

Here, like the plaintiff in *Bowman*, Pirv sought to preserve the evidence only to have it destroyed by a third party.  However, unlike in *Bowman*, the record here reflects that Pirv had reason to believe the Police Bureau had retained the pistols in their entirety.  In addition, unlike the circumstances in *Bowman*, here the defendants knew the pistols could be the source of future claims but also assumed the Portland Police Bureau retained them.

Moreover, while the parties vigorously dispute the prejudice defendants suffer as a result of the destruction of the pistols, the fact that some evidence remains renders *Bowman* unpersuasive.  The destruction of the pistols did not eliminate all physical evidence.  The ammunition remains, as do the expert reports and testimony.[3]  While I recognize that Glock suffers prejudice as a result of the disposal of the pistols, excluding Jerner's report and testimony is more prejudicial to Pirv, who bears the burden of proof.  Glock can have its own experts review Jerner's report and cross-examine Jerner regarding his findings and the disposal of the pistol.  Indeed, at oral argument, when presented with the idea of excluding Jerner's live testimony as an alternative sanction, counsel for Glock rejected that option as potentially more prejudicial than allowing the jury to hear both the report and testimony.  Moreover, the ammunition defendants' position on this motion, arguing for dismissal on the one hand but

---

[3] At oral argument, the parties also addressed the possibility that Glock could obtain and test other pistols from the same lot as the two pistols that malfunctioned.  Such testing could produce evidence related to Pirv's design defect claim.

FINDINGS AND RECOMMENDATION/ORDER - Page 12

opposing lesser sanctions on the other, demonstrates that excluding Jerner's expert report and testimony would be prejudicial to them.

In summary, I have reviewed the many cases defendants cite in support of their argument and none of them address the factual scenario presented to me here.  Under the totality of the circumstances presented to me, I find that Pirv did not engage in willful spoliation.  Accordingly, no evidentiary sanction is warranted.  *See Med. Lab. Mgmt. Consultants*, 306 F.3d at 824 ("When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected.").  The defendants' motion to dismiss and the Glock defendants' motions for lesser evidentiary sanctions should be denied.

## II.     Motion for Monetary Sanctions

Under its inherent powers, a district court may award monetary sanctions against a party of counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)).  Thus, "the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Id.*  "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

Here, I have found that Pirv did not engage in any culpable conduct.  I therefore deny the Glock defendants' motion for costs.

## CONCLUSION

The Glock Defendants' Motion to Dismiss (#59) and alternative (Corrected) Motion to Preclude Plaintiff's Proposed Expert  (#59) should be denied.  Defendant Federal Cartridge's

FINDINGS AND RECOMMENDATION/ORDER - Page 13

Motion for Joinder in Glock Defendants' Motion to Dismiss (#84) should be denied.  The Glock defendants' alternative Motion for Costs (#59)  is denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due October 29, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 15th day of October, 2008.


 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

FINDINGS AND RECOMMENDATION/ORDER - Page 14