IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLORIN B. PIRV,                                                    CV 06-145-PK

              Plaintiff,                                        OPINION & ORDER

v.

GLOCK, INC., GLOCK, Ges.m.b.H
and FEDERAL CARTRIDGE
COMPANY,

              Defendants.
_____

PAPAK, Magistrate Judge:

      Plaintiff Florin Pirv brought suit against Defendants Glock, Inc., Glock Ges.m.b.H. and Federal Cartridge Company after his Glock service pistol exploded during a police department training, causing serious injuries to his face and hands. Pirv asserts claims for products liability and negligence against all defendants. This court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs' motions to compel discovery from Glock, Inc.(#155) and Glock Ges.m.b.H. (#152) are now before the court.

## BACKGROUND

      On March 4, 2004, Florin Pirv was injured when a Glock Model 21 service pistol exploded while he was shooting at the Portland Police Bureau's training range. Glock Ges.m.b.H. designed and

OPINION AND ORDER – PAGE 1

manufactured the pistol that malfunctioned. Glock, Inc. assembles and distributes Glock products in the United States. Although Glock, Inc., indicates that it has no publicly held corporate parents or subsidiaries, deposition testimony from a Glock, Inc. officer and other documents suggest that Glock Ges.m.b.H. is the parent company of Glock, Inc. Glock, Inc., however, maintains its records separate from Glock Ges.m.b.H. pursuant to its own records retention policy.

A similar pistol failure occurred three days before and involved another police officer using a Glock 21 handgun and the same type of ammunition. In addition, two metallurgical reports, one from 1991 concerning a Glock S/N WA460 .45 caliber and another from 1994 concerning a Glock 21 model, both concluded that the Glock pistol at issue had a deficient design.

Pirv filed suit against the Glock defendants and the ammunition manufacturer in February 2006. The complaint alleges strict products liability and negligence against each defendant, but does not articulate specifically how the Glock 21 pistol and/or its ammunition were defective.

## LEGAL STANDARDS

**I.   Scope of Discovery Generally – Federal Rule of Civil Procedure 26**

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party and may lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). A district court enjoys broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). District courts also have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

**II.   Motions to Compel – Federal Rule of Civil Procedure 37**

In pertinent part, Federal Civil Procedure Rule 37 empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33, or fails properly respond to a request for production of

OPINION AND ORDER – PAGE 2

documents under Rule 34. Fed. R. Civ. Pro. 37(a)(3)(B). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

### III.   Interrogatories – Federal Rule of Civil Procedure 33

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Moreover, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." *Id.* The court, however, "may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Id.*

### IV.   Requests for Production – Federal Rule of Civil Procedure 34

In pertinent part, Rule 34 provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce documents or permit inspection of items "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The response to a propounding party's request for production of documents "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons" for the objection. Fed. R. Civ. P. 34(b)(2)(B). "An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

## DISCUSSION

### I.   Motion to Compel Discovery From Glock, Inc.

#### A.   Catastrophic Failures and Warranty and Repair Requests – Requests for Production 27, 28, 30, 33, 35, 76, 77 and Interrogatories 3-6, 11

Pirv's discovery requests seek catastrophic failure information and information related to warranty and repair requests for all Glock models from December 1990 until 2009.[1] The requests

---

1 Although Pirv's requests do not contain a specific time frame, his motion and reply brief focus on 1990 to the present.

define catastrophic failure as an event in which structural damage to the pistol occurred during the firing of ammunition. Requests for Production 27, 28, 30, 33 and 35 seek all documents related to: reports, testing or inspection of catastrophic failures of Glock pistols; acts or omissions of a third party that may have contributed to catastrophic failures; and communications with Glock distributors or retailers or ammunition manufacturers or retailers concerning catastrophic failures. Requests for Production 76 and 77 seek all documents Glock exchanged with Federal Cartridge or any ammunition manufacturer or distributor pertaining to warranty claims, repair requests and reports of damage to any Glock pistol or injury to any user of a Glock pistol. Interrogatories 3, 4, 5 and 6 ask Glock to identify the number of reports of catastrophic failures received by Glock, Inc. and the number of catastrophic failure events known to Glock, Inc. regarding all Glock pistols and the Glock 21 specifically. Interrogatory 11 asks Glock, Inc. to identify all employees and consultants who have investigated a catastrophic failure.

Pirv's request for materials dating back to December 1990 is not overly broad. Defendants introduced the Glock 21, the model at issue in this case, in late 1990 or early 1991. Moreover, Pirv provided a 1991 report indicating that the Glock 21 had design problems at that time. Pirv also indicates that the Glock 21 has not undergone significant design changes since his injury in 2004. Thus, records from December 1, 1990 to May 31, 2009 are likely to contain or lead to admissible evidence.

Pirv's request for information related to all Glock models is more troubling. Pirv argues that the catastrophic failures, or lack of failures, in other Glock models may be relevant to show a design defect in the thickness in the walls surrounding the firing chamber in the Glock 21, but does not explain how the chamber wall thickness relates to other aspects of a pistol, including the caliber of ammunition or other features. Glock, Inc. indicates that the Glock 21's most salient design feature is that it is chambered for .45 ACP ammunition, because pistols chambered for .45 ACP ammunition have a barrel

OPINION AND ORDER – PAGE 4

design that accommodates the lower pressure level produced by that type of ammunition. Moreover, while Pirv also submits that several catastrophic failures within fifteen months of the 2001 manufacture date of his Glock 21 suggests defective metallurgy in Glock pistols during that time, he does not limit his request to reports that attributed failures to metallurgical problems. I conclude that Pirv's requests for production and interrogatories should be more narrowly tailored to seek documents and responses related to the Glock models chambered for .45 ACP ammunition and to metallurgical deficiencies in any Glock model from January 1, 2000 through December 31, 2003.

### B.     Barrels Withheld From Sale – Request for Production 91

Pirv is only entitled to a portion of the documents he seeks in Request for Production 91. That request seeks all documents related to barrels of Glock 21 pistols that Glock withheld from sale due to "quality control issues," including post-manufacturing testing. Although Pirv narrowed the request to documents related to barrels withheld from sale due to "quality control issues except for those concerning barrels withheld for reasons solely limited to minor scratches or unclear serial numbers," it is still too broad. For the reasons set forth above, I limit the request to the period between December 1, 1990 through May 31, 2009. In addition, Glock, Inc. need only provide documents pertaining to to Glock 21 barrels withheld from sale due to actual or possible safety concerns including, but not limited to, fissures, cracks, discoloration or other indications that the barrel lacked structural integrity.

### C.     Documents in the Possession of Glock Ges.m.b.H. – Requests for Production 9-11, 14, 15, 22, 39-41 and Interrogatory 15

The parties dispute whether Glock, Inc. must produce documents not in its actual possession but instead held by Glock Ges.m.b.H. Rule 34 allows discovery of documents within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). Control does not mean the practical ability to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (construing the term "control" under Federal Rule of Civil Procedure 34,

OPINION AND ORDER – PAGE 5

governing subpoenas). Rather, "[c]ontrol is defined as the legal right to obtain documents upon demand." *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Oil Heat Inst. v. Northwest Natural Gas*, 123 F.R.D. 640, 642 (D. Or. 1988) (denying motion to compel trade association to produce member organizations' records where no evidence suggested the association had any legal right to the record and the party could request the information directly). "A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *Int'l Union of Petroleum & Indus. Workers,* 870 F.2d at 1452.

Pirv has failed to establish that Glock, Inc. has control over the records of Glock Ges.m.b.H. Pirv has submitted evidence to show that Glock Ges.m.b.H. is the parent company of Glock, Inc. but has not established that Glock, Inc., as a subsidiary, has a legal right to obtain documents from Glock Ges.m.b.H. Glock, Inc. maintains its records separate from Glock Ges.m.b.H. and does not have actual possession of the documents at issue. Thus, while I recognize that Pirv seeks to hold Glock, Inc. equally responsible should Glock Ges.m.b.H. improperly withhold documents, he has failed to establish grounds to do so. I therefore deny Pirv's motion to compel Glock, Inc. to produce documents that are not in its actual possession but rather are held by Glock Ges.m.b.H..

Pirv, however, may obtain Glock, Inc.'s response to Interrogatory 15. Interrogatory 15 asks Glock, Inc. to explain the meaning of a pentagram-shaped marking next to the serial number on Glock pistol barrel assemblies. Glock, Inc. has not indicated that it does not have the information that Pirv seeks. Accordingly, Glock, Inc. should respond to the inquiry regarding the pentagram-shaped symbol to the extent of its knowledge.

### D.   Summary

Pirv's motion to compel discovery from Glock, Inc. is granted in part as follows:

   1. Glock, Inc. must supplement its response to Requests for Production 27, 28, 30, 33, 35, 76 and 77 to include: a) records from December 1990 to May 31, 2009 that pertain to Glock

OPINION AND ORDER – PAGE 6

models chambered for .45 ACP ammunition and b) records from January 1, 2000 through December 31, 2003 that pertain to metallurgical problems or deficiencies in any Glock model, or where metallurgical causes were not ruled out.

2. Glock, Inc. must supplement its response to Interrogatories 3, 4, 5 and 6 by providing: a) the total number of known or reported catastrophic failures from December 1, 1990 to May 31, 2009 in Glock models chambered for .45 ACP ammunition; and b) the total number of known or reported catastrophic failures from December 1, 1990 to May 31, 2009 that involved the Glock 21; or, in the event that Glock, Inc. does not have that information, c) a statement indicating whether Glock, Inc. has destroyed records of catastrophic failures, and, if so, when and why it destroyed the records.

3. Glock, Inc. must supplement its response to Interrogatory 11 to provide information regarding the individuals who investigated catastrophic failures from December 1990 to May 31, 2009 that involved a Glock model chambered for .45 ACP ammunition or who investigated metallurgical problems or deficiencies in any Glock model from January 1, 2000 through December 31, 2003.

4. Glock, Inc.'s production in response to Request for Production 91 need only provide documents from December 1990 through May 31, 2009 that pertain to Glock 21 barrels withheld from sale due to actual or possible safety concerns including, but not limited to, fissures, cracks, discoloration or other indications that the barrel lacked structural integrity.

5. Glock, Inc. should respond to Interrogatory 15 to the extent of its knowledge.
The remainder of Pirv's motion to compel is denied.

II.     **Motion to Compel Discovery From Glock Ges.m.b.H**

   A.     **Glock 21 Design and Manufacture – Requests for Production 9, 11, 14, 15 and Interrogatories 7, 11, 12, 23**

Pirv is entitled to supplemental responses to Requests for Production 9, 11, 14 and 15. These requests seek all documents related to the design or development of the Glock 21, including testing of the design, manufacturing and quality control procedures related to the barrel assembly and the barrel assembly metallurgical specifications. Although Glock Ges.m.b.H. asserts that it has produced all of the documents and information Pirv needs to evaluate the design of the Glock 21, it has not indicated that it has produced all the documents responsive to Pirv's requests. Glock Ges.m.b.H. cannot unilaterally decide that Pirv does not need certain documents. Moreover, the information Pirv seeks is reasonably calculated to lead to admissible evidence in that it all relates to the design and quality control measures for the model at issue in this case. I therefore conclude that Glock Ges.m.b.H. must supplement its production in response to Requests for Production 9, 11, 14 and 15 or verify that it has provided all documents responsive to Pirv's requests. Responsive documents include documents that relate to the design, testing, manufacturing and quality control generally, if Glock Ges.m.b.H. followed those procedures when it developed the Glock 21, regardless of whether the documents specifically mention the Glock 21.

Pirv is entitled to supplemental responses for Interrogatories 7 and 23. Interrogatory 7 asks Ges.m.b.H. to identify the persons involved in the design, supervision of manufacturing, supervision of assembly and distribution of the Glock 21. Interrogatory 7 is too broad, however, in that it asks for individuals responsible for supervision of manufacturing, supervision of assembly and distribution of the Glock 21 without reference to a specific time, when only the individuals responsible during the manufacture of Pirv's Glock are relevant. Interrogatory 23 asks for the dates of all design changes to the Glock 21 barrel from January 1, 1990 until May 31, 2009. Glock Ges.m.b.H.'s responses refer to

OPINION AND ORDER – PAGE 8

documents it has produced but does not identify the dates of changes. Glock should identify the relevant dates.

Pirv is also entitled to supplemental responses to Interrogatories 11 and 12. Those interrogatories ask Glock Ges.m.b.H. to state the steel specifications for Glock 21 pistols, the dates those specifications were in use, and the reasons for any changes to those specifications. Glock Ges.m.b.H. has only provided the specifications that applied to Pirv's pistol and did not provide the reasons for any changes. This information is relevant, however, in light of the earlier reports of metallurgical problems in the Glock 21 model. Glock Ges.m.b.H. must therefore supplement its responses.

### B.    Requests Related to All Glock Models – Requests for Production 22, 23, 24

Pirv is entitled to supplemental responses to Requests for Production 22, 23 and 24 but is not entitled to the full breadth of the documents he seeks. The requests seek documents related to testing the metallurgical properties of barrel assemblies, the ability of chambers to withstand pressure caused by firing ammunition and the ability to detect defects in barrel assemblies for all Glock pistols. Pirv's request is not limited by the time frame or the model of pistol. Because defendants introduced the Glock 21 in late 1990, and likely tested it during development beforehand, documents from January1, 1990 to May 31, 2009 are relevant. In addition, models chambered for .45 ACP ammunition bear sufficient similarities to the Glock 21 that documents pertaining to their design and testing may lead to admissible evidence. Finally, information related to metallurgical problems or deficiencies in any Glock model from January 1, 2000 through December 31, 2003 may also lead to admissible evidence. I therefore conclude that Glock Ges.m.b.H. must supplement its production in response to Requests for Production 22, 23, 24 and 26 to include: a) records from January 1, 1990 to May 31, 2009 that pertain to Glock models chambered for .45 ACP ammunition and b) records from January 1, 2000 through December 31, 2003 that pertain to metallurgical problems or deficiencies in any Glock model.

OPINION AND ORDER – PAGE 9

### C. Glock 20 Model - Requests for Production 47, 48

Pirv is entitled to only a portion of the information he seeks in Requests for Production 47 and 48. Request for Production 47 seeks documents stating that the Glock 21 design is based on the Glock 20 design, while Request for Production 48 seeks documents pertaining to the design or dimensions of the Glock 20. Pirv explains that if the Glock 21, which is chambered for .45 ACP ammunition, was derived from the Glock 20, which is chambered for 10 mm ammunition, the Glock 21 could be defective because its external dimensions were not generous enough to accommodate its larger ammunition. Thus, information pertaining to the Glock 20 design is only relevant if the Glock 21 is derived from that design. Moreover, even if the Glock 21 is based on the Glock 20, then only the Glock 20 design that served as a model for the Glock 21 is relevant. I therefore conclude that Glock Ges.m.b.H. must provide documents responsive to Request for Production 47 if such documents exist and if so, must also provide documents showing the dimensions of the Glock 20 design that provided the basis for the Glock 21 design.

### D. Proof Testing – Request for Production 59

Pirv is not entitled to the documents he seeks in response to Request for Production 59. That request seeks all documents pertaining to any C.I.P.-accredited proof house's rejection of any barrel chambered for .45 ACP or 10 mm cartridge ammunition. Glock responded by indicating that 5,213 Glock barrels manufactured from the same batch of steel that it used to manufacture Pirv's Glock 21 underwent and passed C.I.P.-accredited proof testing. Pirv explains that defendants do not perform proof testing on pistols sold in the United States and argues that documents pertaining to proof testing of Glock pistols sold in other countries are relevant to show that proof testing is an effective means of weeding out defective barrels. Pirv, however, does not limit his request to proof testing that weeded out pistols with problems similar to his pistol. In addition, the rejection rate does not necessarily reflect the accuracy of the test. I therefore deny Pirv's motion to compel further response from Glock

OPINION AND ORDER – PAGE 10

Ges.m.b.H. as overly broad.

  **E.**  **Glock 30 and Glock 36 Models – Requests for Production 49, 50**

Pirv is entitled to supplemental discovery in response to Request for Production 49 and 50. Those requests seek documents pertaining to the design or dimensions of the Glock 30 and Glock 36 pistol models. Models chambered for .45 ACP ammunition bear sufficient similarities to the Glock 21 that documents pertaining to their design and dimensions may lead to admissible evidence. Glock Ges.m.b.H. maintains that it has provided all relevant information concerning the design of the Glock 30 and 36 models, but does not state that it has produced all responsive documents. Glock Ges.m.b.H. must supplement its response or verify that it has provided all documents pertaining to the Glock 30 and Glock 36 design.

  **F.**  **Glock 21 Defects – Request for Production 25 and 26**

Pirv's Requests for Production 25 and 26 are vague. Those requests seek documents "relating to any defect in the Glock 21" and "relating to defects in the barrel assemblies of any Glock pistol." Pirv, however, apparently did not supply a definition for defect. I therefore deny his motion to compel production in response to these requests.

  **G.**  **Barrels Withheld From Sale – Request for Production 54**

Pirv is entitled to a portion of the records he seeks in Request for Production 54. That request is overly broad in that it seeks all documents related to barrels of Glock 21 pistols that Glock withheld from sale due to "quality control issues." My ruling on Pirv's request for the same materials from Glock, Inc. applies here. For the reasons set forth in that ruling above, Glock Ges.m.b.H. need only provide documents pertaining to to Glock 21 barrels withheld from sale due to actual or possible safety concerns including, but not limited to, fissures, cracks, discoloration or other indications that the barrel lacked structural integrity, for the period between December 1, 1990 through May 31, 2009.

      **H.**    **Catastrophic Failures and Warranty and Repair Requests – Requests for Production 27-30, 32, 33, 35, 43-45 and Interrogatories 3-6**

Pirv's discovery requests seek catastrophic failure information and information related to warranty and repair requests for all Glock models for all years. Requests for Production 27, 28, 29, 30, 32, 33, 35 seek all documents related to reports, testing or inspection of catastrophic failures of Glock pistols, acts or omissions of a third party that may have contributed to catastrophic failures, and consultations with technical persons and Glock distributors or retailers or ammunition manufacturers or retailers concerning catastrophic failures. Requests for Production 43, 44, and 45 seek documents pertaining to catastrophic failure of Glock pistols used by a law enforcement agency, military organization or a private person. Request for Production 45 seeks all documents Glock Ges.m.b.H. exchanged with any ammunition manufacturer or distributor pertaining to warranty claims, repair requests and reports of damage to any Glock pistol or injury to a user of any Glock pistol. Interrogatories 3, 4, 5 and 6 ask Glock to identify the number of reports of catastrophic failures received by Glock, Ges.m.b.H. and the number of catastrophic failure events known to Glock Ges.m.b.H. regarding all Glock pistols and the Glock 21 specifically.

      Pirv is not entitled to all the documents and information he seeks in Requests for Production 27-30, 32, 33, 35, 43-45 and Interrogatories 3-6. As I discussed in my ruling on Pirv's motion to compel similar discovery from Glock, Inc. I conclude that Pirv's requests for production and interrogatories should be more narrowly tailored. Glock Ges.m.b.H. need only provide documents and responses regarding Glock models chambered for .45 ACP ammunition and metallurgical deficiencies in any Glock model from January 1, 2000 through December 31, 2003. Glock Ges.m.b.H. must include failures of pistols sold overseas in its response. In light of its limited overseas sales of models chambered for .45 ACP ammunition, I am unconvinced that Glock Ges.m.b.H.'s production of failures of pistols sold overseas is unduly burdensome.

OPINION AND ORDER – PAGE 12

I.     **Recalls of Glock Pistols – Request for Production 6**

The parties' dispute over Request for Production 6 centers around the definition of "recall." Request for Production 6 seeks all documents related to any recall of Glock pistols. Glock Ges.m.b.H. indicates that is has never instituted a recall as that term is understood in its industry. A Glock, Inc., representative testified, however, that Glock Ges.m.b.H. had identified a "minor number" of broken rails in a series of pistols and volunteered to provide replacement frames to anyone who owned a pistol from that series. That situation is not a recall of a product, which entails calling the product back from consumers. Thus, it does not appear that Glock Ges.m.b.H. has improperly withheld documents.

I define recall as the decision (voluntary or not) by a manufacturer or distributor to call a product back from retailers and consumers. Glock Ges.m.b.H. must provide documents related to any recall of any Glock model chambered for .45 ACP ammunition. If Glock Ges.m.b.H. has never instituted a recall as I have defined it, it should verify that in a supplemental response.

J.     **Summary**

Pirv's motion to compel discovery from Glock Ges.m.b.H. is granted in part as follows:

1. Glock Ges.m.b.H. must supplement its response to Requests for Production 9, 11, 14 and 15 to provide all responsive documents or verify that it has already provided all responsive documents.

2. Glock Ges.m.b.H. must supplement its response to Interrogatory 7 by identifying the persons responsible for the supervision of manufacturing, supervision of assembly and distribution of Pirv's Glock 21. In addition, Glock Ges.m.b.H. must indicate whether anyone, other than Gaston Glock, was responsible for the design of the Glock 21 from 1990 to the present.

3. Glock Ges.m.b.H. must supplement its response to Interrogatory 23 by providing the dates for each change to the Glock 21 barrel design, including changes to dimensions and

metallurgical specifications, from January 1, 1990 until May 31, 2009.

4. Glock Ges.m.b.H. must supplement is responses to Interrogatories 11 and 12 by providing the steel specifications for the Glock 21 model from 1990 to 2001, the dates of the specifications, and the reasons for any changes.

5. Glock Ges.m.b.H. must supplement its production in response to Requests for Production 22, 23, 24 and 26 to include: a) records from January 1, 1990 to May 31, 2009 that pertain to Glock models chambered for .45 ACP ammunition and b) records from January 1, 2000 through December 31, 2003 that pertain to metallurgical problems or deficiencies in any Glock model.

6. Glock Ges.m.b.H. must provide documents responsive to Request for Production 47, if such documents exist, and if so, must also provide documents showing the dimensions of the Glock 20 design that provided the basis for the Glock 21 design.

7. Glock Ges.m.b.H. must supplement its response to Requests for Production 49 and 50 or verify that it has provided all documents pertaining to the Glock 30 and Glock 36 design.

8. Glock Ges.m.b.H.'s production in response to Request for Production 54 need only provide documents from December 1990 through May 31, 2009 that pertain to Glock 21 barrels withheld from sale due to actual or possible safety concerns including, fissures, cracks, discoloration or other indications that the barrel lacked structural integrity.

9. Glock Ges.m.b.H. must supplement its response to Requests for Production 7-30, 32, 33, 35, 43-45 to include: a) records from December 1990 to May 31, 2009 that pertain to Glock models chambered for .45 ACP ammunition and b) records from January 1, 2000 through December 31, 2003 that pertain to metallurgical problems or deficiencies in any Glock model.

10. Glock Ges.m.b.H. must supplement its response to Interrogatories 3, 4, 5 and 6 by providing: a) the total number of known or reported catastrophic failures from December 1,

OPINION AND ORDER – PAGE 14

1990 to May 31, 2009 in Glock models chambered for .45 ACP ammunition; and b) the total number of known or reported catastrophic failures from December 1, 1990 to May 31, 2009 that involved the Glock 21; or, in the event that Glock Ges.m.b.H. does not have that information, c) a statement indicating whether Glock Ges.m.b.H. has destroyed records of catastrophic failures, and, if so, when and why it destroyed the records.

    11. Glock Ges.m.b.H. must supplement its response to Request for Production 6 by providing documents related to any recall of any Glock model chambered for .45 ACP ammunition.  If Glock Ges.m.b.H. has never instituted a recall as I have defined it, Glock Ges.m.b.H. should verify that in a supplemental response.

The remainder of Pirv's motion to compel is denied.

## CONCLUSION

Pirv's motion to compel discovery from Glock, Inc. (#155) and motion to compel discovery from Glock Ges.m.b.H. (#152) are granted in part and denied in part as described in this order.

IT IS SO ORDERED.

Dated this 6th day of October, 2009.

                                              /s/ Paul Papak
                                              Honorable Paul Papak
                                              United States Magistrate Judge