IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLORIN B. PIRV,                                         CV 06-145-PK

           Plaintiff,                              OPINION & ORDER

v.

GLOCK, INC., GLOCK, Ges.m.b.H
and FEDERAL CARTRIDGE
COMPANY,

           Defendants.
_____

PAPAK, Magistrate Judge:

      Plaintiff Florin Pirv brought suit against Defendants Glock Inc., Glock Ges.m.b.H. and

Federal Cartridge Company after his Glock service pistol exploded during a police department

training, causing serious injuries to his face and hands.  Pirv asserts claims for products liability

and negligence against all defendants.  This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Glock Ges.m.b.H's Motion for Protective Order (#204) and Glock Inc.'s Motion for Protective

Order (#203) are now before the court.

OPINION AND ORDER – PAGE 1

## BACKGROUND

On March 4, 2004, Florin Pirv was injured when a Glock Model 21 service pistol exploded while he was shooting at the Portland Police Bureau's training range.  Glock Ges.m.b.H. manufactured the pistol that malfunctioned.  Glock Inc. distributes Glock products in the United States.  At the time of the incident, the pistol was loaded with ammunition manufactured by Federal Cartridge.  A similar pistol failure occurred three days before and involved another police officer using a Glock 21 handgun and the same type of ammunition.

Pirv filed suit against the Glock defendants and the ammunition manufacturer in February 2006.  The complaint alleges strict products liability and negligence against each defendant, but does not articulate specifically how the Glock 21 pistol and/or its ammunition were defective.  In July 2008, Glock defendants filed a motion to dismiss, or in the alternative to preclude plaintiff's expert testimony, after it came to light that the barrels from the pistols involved in the accidents were missing.  The court denied the motion to dismiss in October 2008.

## LEGAL STANDARDS

### I.    Scope of Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party and may lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  A district court enjoys broad discretion in controlling discovery.  *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).  District courts also have broad discretion to determine relevancy for discovery purposes.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

OPINION AND ORDER – PAGE 2

II.    **Motion for Protective Order**

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party resisting discovery or seeking limitations may show good cause by demonstrating harm or prejudice that will result from the discovery. *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002). Generally, a party seeking a protective order must meet a "heavy burden" to establish the basis for a protective order. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). A party, however, may obtain a protective order under Rule 26(c) when requests for admissions are "so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome." Fed. R. Civ. P. 36 advisory committee note (1970).

## DISCUSSION

I.    **Timeliness and Format of the Glock Defendants' Motions**

Pirv contends that the court should deny the Glock defendants' motions because they are untimely and failed to set forth the discovery requests and responses, as required by Local Rule 37.1. I reject these arguments as overly technical. This court has in the past treated motions as timely so long as the party filed the motion on the due date, regardless of the actual timing of the submission. In addition, although the Glock defendants did not set out all the requests and responses in their memoranda, they submitted an exhibit that contains that information.

II.    **Merits of the Glock Defendants' Motions**

Under Rule 36 of the Federal Rules of Civil Procedure, "A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)

OPINION AND ORDER – PAGE 3

relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). Admissions serve "to facilitate proof with respect to issues that cannot be eliminated from the case" and "to narrow the issues by eliminating those that can be. *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007); *see also Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.").

Thus, courts have found that requests for admissions that do not serve to narrow issues for trial are inappropriate. *Ochotorena v. Adams*, No. 05-1524, 2009 WL 1953502, at *5 (E.D. Cal. July 7, 2009) (denying motion to compel where the request for admission sought to determine whether certain video surveillance evidence existed); *Vaden v. Sumerhill*, No. 06-1836, 2008 WL 822152, at *2 (E.D. Cal., Mar. 27, 2008) (denying motion to compel a response to a request for admission because the request sought information that would not limit the factual issues in the case); *Burns v. Phillips*, 50 F.R.D. 187, 188-189 (N.D. Cal. 1970) (sustaining objections to requests for admissions because the requests were not relevant to issues in the case and sought to dispute facts already testified to by the opposing party and several witnesses).

Moreover, "[r]equests for admission are not a general discovery device." *Misco, Inc. v. Mid-South Aluminum Co.*, 784 F.2d 198, 205 (6th Cir. 1986) (citation omitted); 7 Moore's Federal Practice – Civil § 36.02. Rather, the rule "presupposes that the party proceeding under it knows the facts or has the document and merely wishes the opponent to concede their genuineness." *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting 8A Federal Practice and Procedure § 2252). If a party could use requests for

OPINION AND ORDER – PAGE 4

admissions as a discovery device, that practice would circumvent the numerical limit imposed on the number of interrogatories under Rule 33. *Misco, Inc.*, 784 F.2d at 205.

"Requests for admission should be phrased simply and directly so that it can be denied without explanation." *Safeco*, 181 F.R.D. at 447 (quoting 8A Federal Practice and Procedure § 2258); *Vaden*, 2008 WL 822152, at *2 (denying motion to compel response to request for admission because the request could not easily be answered without clarification). Thus, "requests for admission should not contain compound, conjunctive, or disjunctive statements." *Tuvalu v. Woodford*, No. 04-1724, 2006 U.S. Dist. LEXIS 80642, at *18 (E.D. Cal. Nov. 3, 2006).

Parties, however, "may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994). Thus, "when the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *United States v. Englund*, 235 F.R.D. 675, 684 (E.D. Cal. 2006).

### A.    Glock Ges.m.b.H.'s Motion

Pirv has served Glock Ges.m.b.H. with 190 requests for admission. Glock Ges.m.b.H. now takes issue with Pirv's fifth and sixth sets of requests for admission. Specifically, Glock Ges.m.b.H. contends that Requests 91-111 and 113-190 are actually interrogatories and that many of those requests seek irrelevant information. Pirv contends that the requests are not discovery devices but rather seek to confirm facts he has already obtained from documents produced by Glock Ges.m.b.H. and other sources. In addition, some of the admissions are based

on facts contained in Glock Ges.m.b.H.'s interrogatory responses, which Glock Ges.m.b.H. has failed to sign.  The specific requests and arguments are set forth below.

      1.      **The Tenifer Process, Requests 91 – 97, 105**

Pirv seeks several admissions regarding the Tenifer process.  Requests for admission 91, 92, 93, 94 and 95 ask Glock to admit that the Tenifer process is a commercial process used by entities other than Glock Ges.m.b.H., that Glock Ges.m.b.H. represents that the process achieves a "64 HRC" degree of hardness and is a "unique Glock hi-tech surface refinement," that Glock Ges.m.b.H "routinely achieves" that hardness on the barrels it manufactures, and that Glock Ges.m.b.H. intends to achieve that degree of hardness.  Request Number 96 asks Glock Ges.m.b.H. to admit that HRC is a measure of hardness based on the Rockwell C scale.  Request Number 97 asks Glock Ges.m.b.H. admit that the Tenifer process used by Glock is the process described in GES 000232-000250.  Request 105 asks Glock Ges.m.b.H. to "admit that the Tenifer surface treatment does not produce the white coating observed on barrels EDN 787, EDN796, and EDN81 described in Dr. Jerner's expert report."

Glock Ges.m.b.H. objects to these requests on the grounds that they seek information virtually identical to requests it has previously answered, and because they seek to uncover detailed information on how Glock Ges.m.b.H. manufactures its pistols, or otherwise seek to use the requests as a means to conduct further discovery.  Glock Ges.m.b.H. also contends that Request 97 asks it to explain the content of documents it produced in discovery.  Pirv responds that the information contained in the requests can be found in several sources already produced by Glock Ges.m.b.H.

Only a portion of Glock Ges.m.b.H.'s objections are well-taken.  Requests 93 and 96

duplicate information Glock Ges.m.b.H. has already provided in its responses to Requests 64 and 66. Request 97 is inappropriate because it seeks discovery regarding how Glock Ges.m.b.H. characterizes documents it has produced. Requests 94 and 105 are inappropriate because Glock Ges.m.b.H.'s response would likely require some explanation. The remainder of the requests, however, are appropriate. Glock Ges.m.b.H. must therefore respond to Requests 91, 92 and 95.

> **2.    Hardened Surface Layer Specifications and Testing – Requests 98-104**

Pirv seeks several admissions regarding Glock Ges.m.b.H.'s hardened surface layer specifications and testing. His requests for admissions specifically defines hardened surface layer. Requests 98 and 100 ask Glock Ges.m.b.H. to admit that, prior to 2002, it had no specifications for the thickness of the hardened surface layer produced by the Tenifer process on Glock 21 barrels, and currently has no such specification. Requests 103 and 104 ask Glock Ges.m.b.H. to admit that it has no "Rockwell C hardness specification" for the hardened surface layer, nor any other hardness specification. Requests 99 and 101 ask Glock Ges.m.b.H. to admit that it did not not conduct routine quality control testing of the thickness of the hardened surface layer to ensure that it does not "exceed a certain thickness" and that it currently does not such testing. Finally, Request 102 asks Glock Ges.m.b.H. to admit that it has no quality control procedures to directly evaluate the thickness of the hardened surface layer.

With the exception of Requests 99, 101 and 102, Pirv's requests properly seek to confirm information he maintains he has already obtained in other discovery. Requests 99, 101 and 102, however, are inappropriate because Glock Ges.m.b.H.'s response will likely require an explanation concerning how it defines "quality control procedures" and "a certain thickness." Accordingly, Glock Ges.m.b.H. need only respond to requests 98, 100, 103 and 104.

OPINION AND ORDER – PAGE 7

###### 3.    Miscellaneous Facts Concerning Glock Pistols – Requests 106, 113-118

Pirv asks Glock Ges.m.b.H. to confirm various facts regarding Glock pistols in general and the Glock 20 and Glock 21 models in particular.  Specifically, Request 106 asks Glock Ges.m.b.H. to admit that the pentagon-shaped symbol on the barrels of Glock pistols indicates that the barrel is manufactured from steel meeting the standard for Steel No.5 as set forth in Ö-Nol11 3170.  Requests 113, 114, 115, 116 and 117 ask Glock Ges.m.b.H. to admit that the Glock 20 and Glock 21 pistols were introduced into commerce in 1990, that the Glock 20 and Glock 21 both have a barrel length of 117 millimeters and that the Glock 20 barrel and the Glock 21 barrel have the same exterior dimensions. Request 118 asks Glock Ges.m.b.H. to admit that "Glock 21 barrels are machined to final shape using computer-numerically-controlled machinery."

Apart from its general objection that Pirv's requests seek discovery, Glock Ges.m.b.H. claims that Request 115 is improper because it asks that Glock Ges.m.b.H. admit information contained in the design documents in Pirv's possession.  Glock Ges.m.b.H. argues that Requests 114, 116 and 117 are improper because they seek information about the Glock 20 pistols, which are not the same model as the pistol at issue in Pirv's case.  Finally, Glock Ges.m.b.H. claims that that Request 118 seeks discovery on how Glock Ges.m.b.H. manufactures its pistols.  Pirv, however, responds that the information contained in the request can be found in an issue of *Glock Annual*.

Glock Ges.m.b.H.'s objections are without merit.  Requests 106, and 113 - 118 all seek admissions regarding specific, relevant information.  Moreover, this court concluded in the last round of discovery disputes between these litigants that information regarding the Glock 20 could be relevant to a design defect in the Glock 21 if the Glock 21 design was based on the

OPINION AND ORDER – PAGE 8

Glock 20.  (Opinion & Order, #, at 10.)  Therefore, Glock Ges.m.b.H. must respond to Requests 106 and 113-118.

### 4.    Proof Testing and Computer Modeling – Requests 107-111, 119

Pirv seeks several admissions regarding Glock Ges.m.b.H.'s methods for ensuring the safety of the Glock 21.  Specifically, Requests 107 and 109 ask Glock Ges.m.b.H. to admit that, from 1991 to 2002, Glock Ges.m.b.H. did not proof test Glock 21 pistols intended to be sold in the United States market, nor does it conduct such tests now.  Request 108 asks Glock Ges.m.b.H. to admit that "after 1991, it did not implement any testing after completion of the Tenifer process that was specifically intended to detect unsafe conditions in the barrel assembly of Glock 21 pistols."  Requests 110 and 111 ask Glock Ges.m.b.H. to admit that was capable of conducting proof testing in March 2001 and is capable of doing so now.  Request 119 seeks an admission that "Glock Ges.m.b.H. has never performed any kind of computer modeling to assess the ability of Glock 21 barrels to withstand stresses resulting from the firing of ammunition."  Pirv, however, did not provide a definition for proof testing or computer modeling.

The requests regarding proof testing and testing in general are appropriate.  Although Pirv did not provide a definition for proof testing, he has previously requested documents concerning proof testing and Glock Ges.m.b.H. responded to that request, which suggests that the term is sufficiently clear.  In addition, Request 108 regarding testing in general is sufficiently clear and specific to allow Glock Ges.m.b.H. to provide an admit or deny response.  Request 119, regarding computer modeling, however, likely requires an explanation from Glock Ges.m.b.H. because it does not define computer modeling.  Therefore, Glock Ges.m.b.H. must respond to Requests 107-111 but need not respond to Request 119.

### 5.    Glock Ges.m.b.H.'s Expertise – Requests 120-124

After Glock Ges.m.b.H. refused to respond to a previous request for admission on the ground that it sought an expert opinion, Pirv now seeks admissions that Glock Ges.m.b.H. lacks expertise in various areas.  Pirv reasons that if Glock Ges.m.b.H. required an expert opinion to respond to the prior request, it must therefore itself lack expertise in that area.  Pirv's reasoning, however, shows that he merely seeks discovery with these requests, as he cannot know the extent of Glock Ges.m.b.H.'s expertise.  Moreover, Requests 121-124 lack clarity because they contain double negatives.  Therefore, Glock Ges.m.b.H. need not respond to Requests 120-124.

### 6.    Glock Ges.m.b.H.'s Awareness of Litigation and Document Retention Policies – Requests 125-136

Pirv seeks admissions from Glock Ges.m.b.H. regarding its document retention policies, awareness of litigation and retention of documents because he claims this information is relevant to a possible motion for discovery sanctions.  The requests are improper because they do not fall with the purposes served by Rule 33 because they do not eliminate any issues for trial.  If Pirv already has proof of the matters sought within the requests for admissions, he may bring a motion for sanctions without obtaining Glock Ges.m.b.H.'s admissions.  Moreover, Pirv's requests themselves belie that he is seeking discovery in that they ask Glock Ges.m.b.H. to admit that it possessed or discarded documents since March 2004, January 1, 2006 and March 2006 and thus appear to attempt to pinpoint a date.  In addition, Requests 127 and 128 require an explanation from Ges.m.b.H. because they ask whether Glock Ges.m.b.H. was "generally aware" of litigation.  Therefore, Glock Ges.m.b.H. need not respond to Requests 125-136.

### 7.    Glock Ges.m.b.H.'s Responses to Interrogatories – Requests 137-148

Requests 137-148 seek information regarding the manner in which Glock Ges.m.b.H.

OPINION AND ORDER – PAGE 10

responded to several of Pirv's sets of interrogatories.  Pirv maintains this information is relevant

to possible discovery sanctions and notes that Glock Ges.m.b.H. has not provided signed

interrogatory responses.

Pirv's requests are improper.  With the exception of Requests 139, 143 and 147, which

ask Glock Ges.m.b.H. to confirm that it has failed to sign its responses to interrogatories, the

requests seek information on how Glock Ges.m.b.H. prepared those responses.  Requests 139,

143 and 147 are improper because they do not serve to narrow issues for trial.  Glock Ges.m.b.H.

therefore need not respond to Requests 137-148.

I hereby order, however, that Glock Ges.m.b.H. provide signed responses for all

interrogatories Pirv has propounded to date.  The person who answers interrogatories "must sign

them, and the attorney who objects must sign any objections."  Fed. R. Civ. P. 33(b)(5).  "[I]t is

not proper or acceptable for the attorney alone to sign or verify responses." 7 Moore's Federal

Practice - Civil § 33.104 (2008).  Moreover, Glock Ges.m.b.H.'s failure to sign its responses to

interrogatories is especially troubling in light of the fact that the court ordered Glock Ges.m.b.H.

to respond or to supplement its responses to several interrogatories in its most recent discovery

order.

### 8.    Glock Ges.m.b.H.'s Possession of Barrels That Catastrophically Failed – Requests 151-157

Pirv seeks admissions from Glock Ges.m.b.H. regarding its possession of the barrels that

catastrophically failed.  Requests 151-157 seek admissions that Glock Inc. sent such barrels to

Glock Ges.m.b.H. for examination, that Glock Ges.m.b.H. discarded records regarding such

barrels and that Glock Ges.m.b.H. has possessed failed Glock 21 barrels after March 2004 and

January 2006 but discarded them.  Glock Ges.m.b.H. argues that these requests are actually

interrogatories. Pirv, however, maintains that the facts set forth in the requests can be found in Glock Ges.m.b.H.'s discovery responses.

The requests are improper because they do not fall with the purposes served by Rule 33. Pirv's requests belie that he is seeking discovery in that they ask Glock Ges.m.b.H. to admit that it possessed or discarded barrels since March 2004 and January 2006 and thus appear to attempt to pinpoint a date. Moreover, since prior discovery motions in this case demonstrate that Pirv knows the chain of custody with regard to the barrel of his Glock 21 that failed, these requests do not narrow issues for trial. Glock Ges.m.b.H.'s awareness of previous failures, however, is relevant to issues for trial. If Pirv has knowledge that Glock Ges.m.b.H. was aware of previous Glock 21 barrel failures, he may propound a request for admission to confirm that information. In the meantime, Glock Ges.m.b.H. need not respond to Requests 151-157.

### 9.    Glock Ges.m.b.H.'s Engineers – Requests 158-170

Pirv has propounded several requests addressing the knowledge that Glock Ges.m.b.H.'s engineers possess. Specifically, Requests 158-167 asks Glock Ges.m.b.H. to admit that it employs engineers to design barrels, including Reinhold Hirschheiter specifically, and that those engineers know what computer modeling, finite element analysis, modeling analysis and stress concentration is. Pirv, however, does not provide a definition for computer modeling, modeling analysis or stress concentration. Requests 168-169 ask Glock Ges.m.b.H. to admit that it has employed Hirschheiter since the 1980s and that he has participated in the design of Glock pistols since that time.

Portions of Pirv's requests require explanation. Responses to the requests concerning computer modeling, modeling analysis or stress concentration may require some explanation

because Pirv failed to provide a definition for those requests.  Moreover, requests regarding

engineers at Glock Ges.m.b.H. generally may require an explanation, because some engineers

may have knowledge that others do not possess.  The requests concerning Hirschheiter's

employment and knowledge of finite element analysis, however, are sufficiently clear to require

a response from Glock Ges.m.b.H.  Therefore, Glock Ges.m.b.H. must reply to Requests 158,

164, and 167-169 but need not respond to Requests 159-163, 165, 166.

      **10.**      **Glock Ges.m.b.H.'s Relationship to Glock Inc. - Requests 149, 150, 170-178**

Pirv asks for several admissions regarding the relationship between Glock Ges.m.b.H.

and Glock Inc.  Specifically, Requests 149 and 150 ask Glock Ges.m.b.H. to admit that Gaston

Glock has ordered that Glock Inc. employees be terminated from employment and that Glock

Inc. has complied with such requests.  Requests 170 , 171, 172 and 173 ask for admissions that

Robert Glock was an employee of Glock Ges.m.b.H. prior to 2004, that Glock Ges.m.b.H. paid

some of Robert Glock's compensation in 2004, that he resided in Georgia in 2004, and that he is

currently an employee of Glock Ges.m.b.H.  Requests 174, 175, 176 and 178 ask for admissions

that Gaston Glock has been a president of Glock Inc., is the founder and a senior executive of

Glock Ges.m.b.H. and is the sole owner of Unipatent Holding.  Request 177 asks Glock

Ges.m.b.H. to admit that Glock Inc. is owned by Glock Ges.m.b.H. and Unipatent.

Pirv persuasively argues that the admissions are relevant to show that "Glock Ges.m.b.H.

has full control over Glock Inc. and thus had the ability to ensure that Glock Inc. provided

information about the catastrophic failures that occurred in the United States."  Glock

Ges.m.b.H.'s knowledge of catastrophic failures in the United States is relevant to its liability.

Moreover, Pirv has clearly requested specific information.  Glock Ges.m.b.H. should therefore

OPINION AND ORDER – PAGE 13

respond to Requests 149, 150, 170-178.

### 11.    Glock Subsidiaries' Document Retention – Requests 179-190

Requests 179-190 seek admissions from Glock Ges.m.b.H. regarding its formation of Glock H.K. Ltd., Glock America S.A. and Glock Middle East FZE, the document retention policies of those entities, and that those entities possessed and discarded documents relating to Glock 21 pistols that have catastrophically failed. Glock Ges.m.b.H. argues that these requests are actually interrogatories. Pirv, however, maintains that the facts set forth in the requests can be found in Glock Ges.m.b.H.'s discovery responses, the Glock web site, and Glock Ges.m.b.H. deposition testimony.

The requests are improper because they do not fall with the purposes served by Rule 33. Pirv does not indicate that these requests are related to any issue for trial. Although Pirv might seek this material to support a motion for discovery sanctions, if Pirv already has proof of the matters sought in the requests for admissions, he may bring a motion for sanctions without obtaining Glock Ges.m.b.H.'s responses. Therefore, Glock Ges.m.b.H. need not respond to Requests 179-190.

### 12.    Summary

Glock Ges.m.b.H.'s motion for protective order is granted in part and denied in part. The motion is granted with respect to Requests 93, 94, 96, 97, 99, 101, 102, 105, 119-148, 151-157, 159-163, 165, 166 and 179-190. The motion is denied with respect to Requests 91, 92, 95, 98, 100, 103, 104, 106, 107-111, 113-118, 149, 150, 158, 164 and 167-178. In addition, Glock Ges.m.b.H. must provide signed responses for all interrogatories Pirv has propounded to date.

OPINION AND ORDER – PAGE 14

**B.        Glock Inc.'s Motion**

Pirv has served Glock Inc. with 34 requests for admission.  Glock Inc. now takes issue

with nearly all of the requests in Pirv's fourth set of requests for admission.  Specifically, Glock

Inc. contends that Requests 8 and 10-34 are actually interrogatories and that many of those

requests seek irrelevant information.  Pirv contends that the requests are not discovery devices

but rather seek to confirm facts he has already obtained from documents produced by Glock Inc.

and other sources.

**1.        Glock Inc.'s Knowledge Regarding Whether a Barrel Must Maintain
          a Thickness of Untreated Steel to Sustain Repeated Firing – Requests
          8, 11**

Request 11 and Request 8 are related.  Request 8 asks Pirv to admit that a Glock 21 barrel

must retain a sufficient thickness of core untreated steel following case hardening so that the

barrel can withstand the stress of repeated firing.  Glock Inc. objected to this request on the basis

that it called for an expert opinion.  Pirv then followed up with Request 11, which asks Glock

Inc. to admit that it lacks the expertise to know whether the Glock 21 barrel must maintain a

thickness of untreated steel.

Rule 36 "provides that a request may be made to admit any matters within the scope of

Rule 26(b) that relate to statements or opinions of fact."  Fed. R. Civ. P. 36 advisory committee

note (1970).  Under Rule 26(b)(4) a party may depose an expert designated to testify at trial and

obtain a report from the expert.  Fed. R. Civ. P. 26(b)(4)(A).  A party may not, however, "by

interrogatories or deposition, discover facts known or opinions held by an expert who has been

retained or specially employed by another party in anticipation of litigation or to prepare for trial

and who is not expected to be called as a witness at trial."  Fed. R. Civ. P. 26(b)(4)(B).  Thus,

OPINION AND ORDER – PAGE 15

Rule 26 does not rule out requests for admissions that require a testifying expert's opinion. Moreover, Rule 36 requires "that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him."   Fed. R. Civ. P. 33 advisory committee note (1970).  Thus, some courts have required a party to respond to a request for admission even though the party must consult with its expert to prepare its response. *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 331 (E.D. Ky. 2006).

Here, I find that Request 8 is proper but Request 11 is not.  Because Pirv cannot know the extent of Glock Inc.'s expertise, Request 11 improperly seeks discovery.  Glock Inc. must therefore response to Request 8 only.

### 2.    Glock Inc.'s Investigation of Catastrophic Failures – Request 10

Request 10 asks Glock, Inc to admit that it "never consulted with a consultant with respect to the investigation of the catastrophic failure of a Glock pistol prior to March 4, 2004." Glock Inc. argues that this request seeks to attack its previous discovery responses concerning vague terms.

I find that Request 10 is improper.  Glock Inc.'s response will likely require an explanation because "consulted with a consultant" is not particularly clear.  Therefore, Glock need not respond to Request 10.

### 3.    Miscellaneous Facts Concerning Glock Pistols – Requests 12-16

Pirv asks Glock Inc. to confirm various facts regarding the Glock 20 and Glock 21 pistols.  Specifically, Requests 12-16 ask Glock Inc. to admit that the Glock 20 and Glock 21 pistols were introduced into commerce in 1990, that the Glock 20 and Glock 21 both have a barrel length of 117 millimeters and that the Glock 20 barrel and the Glock 21 barrel have the

OPINION AND ORDER – PAGE 16

same exterior dimensions.

Glock Inc. claims that these requests merely seek to annoy and that they are improper because they seek information regarding the Glock 21, which is not the model at issue in this case. Pirv responds that information regarding the Glock 20 could be relevant to a design defect in the Glock 21 if the Glock 21 design was based on the Glock 20.

Glock Inc.'s objections are without merit. Requests 12-16 all seek admissions regarding specific, relevant information. Moreover, this court concluded in the last round of discovery disputes between these litigants that information regarding the Glock 20 could be relevant to a design defect in the Glock 21 if the Glock 21 design was based on the Glock 20. Therefore, Glock Inc. must respond to Requests 12-16.

### 4.    Glock Inc. Pistol Manufacturing and Possession of Documents – Requests 17 – 24

Pirv seeks admissions regarding Glock Inc.'s manufacture of pistols in the United States and its possession of documents pertaining to the manufacturing process. Requests 17 and 18 ask Glock Inc. to admit that it is starting to conduct complete pistol manufacturing operations in the United States and stated as much in a July 2009 press release. Request 24 asks that Glock Inc. admit that it intends to export the pistols it manufactures. Requests 19 through 23 ask Glock Inc. to admit that it possesses certain documents pertaining to the manufacturing process.

Glock Inc. argues that these requests are improper because they do not narrow the issues for trial. Pirv admits as much when he states that the requests are relevant to show that Glock Inc. possesses documents it has not produced in discovery. Pirv can bring a motion for sanctions if he has evidence that Glock Inc. has withheld documents but he may not use Rule 33 admissions to obtain evidence to support such a motion. Therefore, Glock Inc. need not respond

to Requests 17 through 24.

### 5.    Glock Inc.'s March 24, 2004 Press Release – Request 25

Request 25 asks that Glock Inc. admit that it has "represented to the public that the pistols it sells are submitted to rigorous testing before leaving the factory." Glock Inc. objects on the ground that this request asks it to admit to the contents of an unidentified document. Pirv, however, argues that the request pertains to Glock Inc.'s March 24, 2004 press release, which states that Glock products "are submitted to rigorous testing before leaving the factory."

Request 25 is proper to the extent that it seeks to have Glock Inc. confirm that it issued the March 24, 2004 press release containing the statement referring to rigorous testing. Therefore, Pirv may reword the request to indicate that it refers to the March 24, 2004 press release and to ask that Glock Inc. confirm that it issued the press release.

### 6.    Glock Inc.'s Testing of Specific Glock 21 Pistols – Request 26

Request 26 asks Glock Inc. to admit "that the sole testing that the Glock 21 pistols bearing serial numbers EDN 787 and EDN 811 received before being sold by Glock Inc. consisted of firing two ordinary rounds of original factory ammunition in each pistol." Glock Inc. objects to this request on the ground that it misstates Glock Inc.'s interrogatory responses. Pirv, however, indicate that the request merely asks Glock Inc. to admit the truth of its response.

A party seeking a request for admission is not entitled to force his or her opponent "to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case." *Minnesota Mining & Mfg. Co. v. Norton Co.*, 36 F.R.D. 1, 3 (N.D. Ohio 1964). Here, however, I do not have the information to discern whether Request 26 misstates Glock Inc.'s earlier discovery responses because Glock Inc. has not provided the earlier response or explained how

OPINION AND ORDER – PAGE 18

the request misstates it.  I therefore find that Glock Inc. must respond to this request.  If the statement misconstrues Glock, Inc.'s interrogatory response, it may deny on that basis.

### 7.    Glock Inc.'s Relationship to Ges.m.b.H. - Requests 27-34

Pirv asks for several admissions regarding the relationship between Glock Inc. and Glock Ges.m.b.H..  Specifically, Requests 27, 28 and 29 ask for admissions that Robert Glock was an employee of Glock , Inc. in 2004, that Glock Inc. paid some of Robert Glock's compensation in 2004, and that Glock Inc. has represented that he is a Glock Inc. employee.  Requests 30, 31, 32 and 34 ask for admissions that Gaston Glock has been a president of Glock Inc., is the founder and a senior executive of Glock Ges.m.b.H. and is the sole owner of Unipatent Holding.  Request 33 asks Glock Inc. to admit that it is owned by Glock Ges.m.b.H. and Unipatent.

Pirv persuasively argues that the admissions are relevant to show that "Glock Ges.m.b.H. should have cooperated in collecting and preserving materials regarding catastrophic failures because such information is important to improving designs and making safer products."  Pirv, also maintains that the requests are based on documents produced by Glock Inc. and Glock Inc. deposition testimony, corporate filings and published articles.  Glock Inc.'s knowledge of catastrophic failures in the United States is relevant to its liability.  Moreover, Pirv has clearly requested specific information.  Glock Inc. should therefore respond to Requests 27-34.

### 8.    Summary

Glock Inc.'s motion for protective order is granted in part and denied in part.  The motion is granted with respect to Requests 10-11 and 17-24.  The motion is denied with respect to Requests 8, 12-16 and 26-34.  With regard to Request 25, Pirv may reword the request to indicate that it refers to the March 24, 2004 press release and to ask that Glock Inc. confirm that

OPINION AND ORDER – PAGE 19

it issued the press release.

## CONCLUSION

Glock Ges.m.b.H.'s motion for protective order (#204) is granted in part and denied in part. The motion is granted with respect to Requests 93, 94, 96, 97, 99, 101, 102, 105, 119-148, 151-157, 159-163, 165, 166 and 179-190. The motion is denied with respect to Requests 91, 92, 95, 98, 100, 103, 104, 106, 107-111, 113-118, 149, 150, 158, 164 and 167-178. In addition, Glock Ges.m.b.H. must provide signed responses for all interrogatories Pirv has propounded to date.

Glock Inc.'s motion for protective order (#203) is granted in part and denied in part. The motion is granted with respect to Requests 10-11 and 17-24. The motion is denied with respect to Requests 8, 12-16 and 26-34. With regard to Request 25, Pirv may reword the request to indicate that it refers to the March 24, 2004 press release and to ask that Glock Inc. confirm that it issued the press release.

Plaintiff's Motion to Withdraw Designation of Confidentiality Regarding Documents Produced by Glock GmbH (#175) and Plaintiff's Motion to Withdraw Designation of Confidentiality Regarding Documents Produced by Glock Inc. (#178) remain under advisement pending the outcome of the parties' upcoming settlement conference.

IT IS SO ORDERED.

Dated this 18th day of November, 2009.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

OPINION AND ORDER – PAGE 20